UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

GARY NEIDIGE, )
)
Plaintiff, )
)
v. ) No. 2:16-cv-00350-JMS-DKL
)
CORIZON INC., *et al.* )
)
Defendants. )

**Entry Granting Motion to Dismiss**

Defendant Superintendent Richard Brown moves to dismiss Plaintiff Gary Neidige's Eighth Amendment medical claim and state-law negligence claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Superintendent Brown's motion is fully briefed. For the reasons explained, Superintendent Brown's motion to dismiss [dkt. 28] is **granted**.

# I.
# Legal Standard

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in

favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## II.
## Discussion

### A. Relevant Allegations in the Amended Complaint

The factual allegations contained in the Amended Complaint necessary to decide this motion are brief and, as required by the legal standard, are taken as true for the purposes of this motion. Mr. Neidige was an inmate at Wabash Valley Correctional Facility ("Wabash Valley") during all times relevant to his claims.

In September 2013, Mr. Neidige complained to medical staff at Wabash Valley regarding sharp pain in his abdomen. For the next year, Mr. Neidige consistently complained to medical staff of abdominal pain, rectal pain, and passing blood. He was primarily treated for hemorrhoids. Eventually, in September and October 2014, Mr. Neidige was diagnosed with a swollen prostate and had a colonoscopy. After multiple biopsies, Mr. Neidige was diagnosed with colon cancer that was terminal and inoperable. Mr. Neidige was treated by several medical care providers at Wabash Valley during this time, many of whom are defendants in this action.

Mr. Neidige's pain continued over the next two years, leading him to file several more healthcare requests. In the midst of this, and while he was otherwise submitting numerous health care requests, Mr. Neidige reached out to Superintendent Brown about his medical problems. He

alleges that Superintendent Brown failed to "tak[e] heed [of] the Plaintiff's complaints when the Plaintiff informed him of the negligence going on in the Medical Department he has a duty to oversee and check." Filing No. 12 at 4. Specifically, the plaintiff asserts that he sent Superintendent Brown a letter on September 3, 2015, "informing Supt. Brown of his diagnosis, that 'the doctors deliberately mistreated [him] and/or were negligent to [his] pleas,' and that '[a]ll he want[s] is to be treated appropriately.'" Filing No. 40 at 4.[1] Issues related to the treatment for his colon cancer and pain management are ongoing.

**B. Analysis**

The Court addresses in this Entry only those claims brought against Superintendent Brown. He contends that both Mr. Neidige's 42 U.S.C. § 1983 claim and his state-law negligence claim fail to state a plausible claim for relief. The Court will address each claim in turn.

*1. Section 1983*

Superintendent Brown argues, among other things, that Mr. Neidige's § 1983 claim against him must be dismissed because the allegations do not show that he was personally involved in the alleged constitutionally inadequate medical care. For the reasons explained, the Court agrees.

"A damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *see Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'") (citation and quotation marks

---

[1] The plaintiff's allegation regarding the letter he sent Superintendent Brown on September 3, 2015, is not contained in his Amended Complaint; it is instead only found in his response brief. The Court, of course, can only consider allegations in the operative pleading when deciding whether dismissal under Rule 12(b)(6) is appropriate. However, because the Court would permit the plaintiff to file a second amended complaint if this allegation was necessary to state a claim, and because this allegation does not change the Court's analysis, the Court will consider it in ruling on the instant motion.

omitted). Whether supervisory personnel at a prison are sufficiently involved in an alleged constitutional violation such that they may be liable for damages often depends on that person's knowledge of, and responsibilities regarding, the alleged harm. The Seventh Circuit has recently discussed what factual circumstances are sufficient to make such a person legally responsible for an alleged constitutional violation.

Mere "knowledge of a subordinate's misconduct is not enough for liability." *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (en banc). Indeed, "inaction following receipt of a complaint about someone else's conduct is [insufficient]." *Estate of Miller by Chassie v. Marberry*, --- F.3d ----, 2017 WL 396568, *3 (7th Cir. 2017); *see Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.").

Something more than generalized knowledge and inaction is required for personal responsibility. Although what additional allegations are required are case-specific, two scenarios are illustrative. First, the Superintendent could be actually engaged with the underlying issue such that personal responsibility is present. *See, e.g.*, *Haywood v. Hathaway*, 842 F.3d 1026, 1032-33 (7th Cir. 2016) (holding that the Warden could be held personally responsible for the harm caused by cold prison conditions because the evidence showed he "had actual knowledge of the unusually harsh weather conditions, that he had been apprised of the specific problem with the physical condition of [the plaintiff's] cell (i.e., the windows would not shut), and that, during the time period of [the plaintiff's] complaint, the warden toured the segregation unit himself"). Or second,

personal responsibility can be present when the underlying issue is the direct responsibility of the individual in question, rather than one for his or her subordinates. *Compare id.*; *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) (holding that the Warden was personally responsible for the alleged cell conditions, and distinguishing *Vance*, because the Warden "not only knew about the problems but was personally responsible for changing prison policies so that they would be addressed"), *with Burks*, 555 F.3d at 595 (holding that the supervisor at issue was not personally responsible; "[t]he Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.").

Here, Mr. Neidige has at most alleged that he made Superintendent Brown aware of his allegedly deficient medical care—that is, assuming Superintendent Brown received Mr. Neidige's letter, which is unclear from the allegations—and no action on Superintendent Brown's part followed. But "inaction following receipt of a complaint about someone else's conduct is not a source of liability." *Marberry*, 2017 WL 396568, at *3. Mr. Neidige's allegations stand in contrast to the above examples and suggest only that Superintendent Brown had generalized knowledge of his medical issues and failed to act. This requires the dismissal of Mr. Neidige's claim. *See Marberry*, 2017 WL 396568, at *3 (holding that summary judgment for the Superintendent was proper because the plaintiff's allegations—that the Superintendent "brushed off his complaints, leaving them to be handled through the chain of command"—were insufficient to demonstrate the personal responsibility necessary to state a § 1983 claim; such allegations brought the plaintiff's "claim within the scope of *Iqbal*, *Vance*, and *Burks* rather than *Haywood*"); *see also Olive v. Wexford Corp.*, 494 Fed. Appx. 671, 673 (7th Cir. 2012) ("[The plaintiff] does contend that he complained to [the head of the prison medical department] Shicker about [his treating doctor's]

decisions and that Shicker did not intervene to help him. But both *Iqbal* and *Burks* hold that a supervisor is not liable just because a complaint is made and an effective solution is not forthcoming."). Accordingly, the Amended Complaint fails to state a viable § 1983 claim against Superintendent Brown.

### 2. *State-law Claim*

Mr. Neidige also asserts a state-law medical negligence claim against Superintendent Brown. Superintendent Brown moves to dismiss this claim, arguing that the allegations show he is entitled to immunity under the Indiana Tort Claims Act ("ITCA").

The ITCA "immunizes both the governmental entity and its officers acting 'within the scope of' their employment from liability in a number of areas." *Cantrell v. Morris*, 849 N.E.2d 488, 495 (Ind. 2006) (quoting Ind. Code § 34-13-3-3). Thus to state a claim "against an employee personally," the plaintiff must provide a "reasonable factual basis" that "an act or omission of the employee" was, as relevant here, "wanton or willful." Ind. Code § 34-13-3-5(c). "Willful or wanton misconduct consists of either: "1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204-05 (Ind. Ct. App. 2011). "The elements of willful or wanton misconduct are: (1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the consequences of his conduct." *Id.* (citation and quotation marks omitted).

Mr. Neidige contends that he has sufficiently alleged a failure to act on the part of Superintendent Brown to make his conduct wanton or willful such that he is not entitled to immunity under the ITCA. The Court disagrees. Indiana law requires the plaintiff to provide a "reasonable factual basis" supporting a contention that immunity does not apply. Ind. Code § 34-13-3-5(c). At most, Mr. Neidige alleges that he sent Superintendent Brown a letter saying that the medical staff was negligent in their treatment of his medical conditions. There is no basis to know whether Superintendent Brown received the letter, how he reacted to it if he received it, and whether that reaction exhibited "an indifference to the consequences of his conduct." *Ellis*, 940 N.E.2d at 1205. There is thus not a reasonable factual basis to conclude that Superintendent Brown's conduct with respect to Mr. Neidige's medical treatment was wanton or willful such that immunity does not apply.

For these reasons, Mr. Neidige's allegations show that Superintendent Brown is entitled to immunity under the ITCA, and his claims against Superintendent Brown must therefore be dismissed.

### III.
### Conclusion

Superintendent Brown's motion to dismiss [dkt. 28] is **granted**. Mr. Neidige's claims against him are **dismissed with prejudice**. The clerk is **directed** to terminate Superintendent Brown as a defendant in this action. No partial final judgment shall issue at this time.

**IT IS SO ORDERED.**

Date: February 7, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

GARY NEIDIGE
117508
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Electronically Registered Counsel